UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


ANGELA HECKMAN NABERHAUS,

      Plaintiff,

v.                                     Case No. 8:18-cv-1335-T-CPT

ANDREW M. SAUL,
Commissioner of Social Security,[1]

      Defendant.
_____/


**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1967, completed high school, and has past relevant work experience as a resource teacher, model home designer, showroom designer, and customer service representative. (R. 26, 364, 415). In April 2012, the Plaintiff applied for DIB, alleging disability as of May 2, 2009, due to anxiety, neuropathy, tarsal tunnel

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit.

syndrome, and back, leg, and upper body issues stemming from an accident at work. (R. 364-65, 414). The Social Security Administration denied the Plaintiff's application both initially and on reconsideration. (R. 160-73).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on June 12, 2014. (R. 69-149). Following that hearing, the ALJ issued a decision in September 2014 finding that the Plaintiff was not disabled. (R. 174-98). Upon review, however, the Appeals Council remanded the Plaintiff's claim for further consideration. (R. 199).

The ALJ held a new hearing on the matter on November 15, 2016. (R. 34-68). The Plaintiff was represented by counsel at that hearing and testified on her own behalf. (R. 36-63). A vocational expert (VE) also testified. (R. 63-68).

In a decision dated December 12, 2016, the ALJ found that the Plaintiff: (1) was insured through December 31, 2018, and had not engaged in substantial gainful activity since her alleged onset date of May 2, 2009; (2) had the severe impairments of obesity, Meniere's disease, tarsal tunnel syndrome, early degenerative disc disease of the shoulder, degenerative disc disease of the cervical spine with spondylosis, and status post right shoulder arthroscopic surgery; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform less than the full range of sedentary work subject to certain limitations, including lifting and carrying ten pounds occasionally and reaching frequently but never overhead; and (5) based in part on the VE's testimony, could not

engage in her past relevant work but was capable of performing other jobs that exist in significant numbers in the national economy. (R. 10-26). In light of these findings, the ALJ again concluded that the Plaintiff was not disabled. *Id.*

The Appeals Council denied the Plaintiff's request for review. (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to perform past relevant work; and (5) can perform other work in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id.* In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hargress*, 883 F.3d at 1305 n.2 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th

Cir. 2004)). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). "[W]hile the court accords deference to the Commissioner's factual findings, no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

### III.

The Plaintiff raises three arguments on appeal: (1) the ALJ failed to properly evaluate certain medical opinions; (2) the ALJ's RFC finding is not supported by substantial evidence; and (3) the ALJ engaged in "sit and squirm" jurisprudence.[4] Each of these arguments is addressed in turn below.

### A.
*Medical Opinions*

In assessing an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)). "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s),

---

[4] The Court has re-ordered the Plaintiff's arguments for purposes of its analysis.

and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)). If a doctor's statement rises to the level of a "medical opinion," an ALJ must state with particularity the weight given to that opinion and the reasons therefor. *Id.* at 1179. In rendering this determination, the ALJ must consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. § 404.1527(c). While the ALJ is required to consider each of these factors, it is not mandatory that she explicitly address them in her decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

The Regulations set forth three tiers of sources for medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. § 404.1527(a)(2), (c)(1)-(2)).

Typically, the ALJ must afford the opinions of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford*, 363 F.3d at 1159. Good cause exists where: (1) the treating physician's opinion is inconsistent with the record evidence; (2) the record evidence supports a conflicting finding; or (3) the treating physician's opinion is conclusory or incompatible with the physician's own medical records. *See* 20 C.F.R. § 404.1527(c); *Phillips*, 357 F.3d at

6

1240-41; *Crawford*, 363 F.3d at 1159. In addition, this Circuit has held that a treating physician's opinion is not entitled to great weight where the evidence of a claimant's daily activities contradicts the opinion. *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) (citing *Phillips*, 357 F.3d at 1241).

If an ALJ finds that the treating physician's medical opinion should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing good cause for discounting the opinion, and those reasons must be supported by substantial evidence. *Hargress*, 883 F.3d at 1305-06. The Court "will not second guess the ALJ regarding the weight the treating physician's opinion deserves so long as the ALJ articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212).

While an ALJ must ordinarily give substantial or considerable weight to a treating physician's opinion, the opinion of a one-time examining doctor—such as a doctor who performs a consultative examination—does not merit such deference. *Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). An examining doctor's opinion, however, is usually accorded greater weight than that of a non-examining physician. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Besides the nature of a physician's relationship with a claimant, the weight of the evidence relied upon by the physician in developing his opinion is also relevant to the weight to be afforded that opinion. Thus, the more a medical source presents

evidence to support his opinion, such as medical signs and laboratory findings, the more deference is given to that medical opinion. 20 C.F.R. § 404.1527(c)(3). Similarly, the more consistent the medical opinion is with the record as a whole, the greater the weight to which it is entitled. 20 C.F.R. § 404.1527(c)(4).

In the end, irrespective of the nature of a physician's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Huntley*, 683 F. App'x at 832 (citing *Sryock,* 764 F.2d at 835); *accord Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.").

Here, the Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of her treating orthopedic surgeon, Mark Frankle, M.D., her treating neurologist, Robert Martinez, M.D., and a consultative examiner, Patrick Ijewere, M.D. (Doc. 15 at 29-33). In particular, she argues that the ALJ erred in according little weight to Drs. Frankle and Martinez's opinions and in neglecting to state the weight she afforded to Dr. Ijewere's assessment. *Id.* The Commissioner counters that the ALJ provided good cause for discounting the opinions of the two treating doctors and that any error she allegedly committed in not explicitly weighing Dr. Ijewere's opinion is harmless. *Id.* at 33-41.

Upon a thorough consideration of the record and the parties' contentions, the Court finds no reversible error in the ALJ's evaluation of these three physicians' opinions.

## 1. Dr. Frankle

The Plaintiff visited Dr. Frankle on January 19, 2010, to obtain a second opinion related to a right shoulder injury the Plaintiff sustained at work on May 2, 2009. (R 571-75). Dr. Frankle diagnosed the Plaintiff with a superior labrum tear in her right shoulder and, on May 6, 2010, performed an arthroscopic surgery and debridement of that shoulder. (R. 569). At her post-operative visits with Dr. Frankle, the Plaintiff's right shoulder showed some improvement with respect to the Plaintiff's ability to move it and the pain it caused her. (R. 562, 564, 565). On February 9, 2011, Dr. Frankle determined that the Plaintiff had reached maximum medical improvement and rated her right shoulder impairment at 4% of her entire body. (R. 560). Dr. Frankle also stated that the Plaintiff required no additional treatment. *Id.* He then opined that the Plaintiff was permanently restricted to lifting no more than fifteen pounds from the floor to her waist, no more than five pounds from her waist to her shoulder, and no weight overhead. *Id.*

On March 28, 2012, the Plaintiff returned to Dr. Frankle complaining of increasing shoulder pain, this time on her left side. (R. 551). After a physical examination, Dr. Frankle diagnosed the Plaintiff with a left shoulder strain and rated that shoulder as a 2% impairment. *Id.* Considering the Plaintiff's left and right shoulder issues, Dr. Frankle limited her to pushing and pulling no more than two pounds, lifting and carrying no more than five pounds from the floor to her waist, and lifting no more than one pound overhead. (R. 551, 576, 607).

In her decision, the ALJ considered Dr. Frankle's opinions but accorded them "little weight" on the grounds that they were not consistent with the doctor's own treatment notes. (R. 22). The ALJ further found that, except for the Plaintiff's right shoulder surgery, she received only conservative treatment for her conditions; the objective evidence did not show any marked limitations in either of her shoulders; and her reported recreational activities conflicted with Dr. Frankle's stated limitations.[5] *Id.* The ALJ noted in this regard that, despite Dr. Frankle's restrictions, the Plaintiff's right shoulder was "substantially better" following her surgery, that she was tolerating clerical activity, and that her shoulder problems did not affect her job performance and were mostly correctable. (R. 22, 553, 571).

Notwithstanding the Plaintiff's urging to the contrary (Doc. 15 at 31), the ALJ's evaluation of Dr. Frankle's opinions is supported by substantial evidence. As demonstrated by the above recitation, the ALJ properly considered various factors in discounting Dr. Frankle's assessments of the Plaintiff's shoulder issues, including contradictions between the doctor's opinions and the record evidence; the Plaintiff's activities of daily living; and her history of conservative treatment. Although the Plaintiff may disagree with the ALJ's determination, the ALJ's stated reasons provide good cause for according Dr. Frankle's opinions little weight. *See Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011) (per curiam) (finding that the ALJ

---

[5] While the ALJ also rejected Dr. Frankle's opinions because he was a "paid workers' compensation 'second opinion,'" the parties agree that this assertion does not constitute a legitimate reason for discounting Dr. Frankle's assessments. As a result, the Court disregards this reason.

had good cause to discount a treating physician's opinion of a claimant's severe limitations because the treating physician's opinion was inconsistent with his own treatment notes); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 865 (11th Cir. 2011) (per curiam) (discussing conservative treatment plan by treating physicians as a reason to discredit plaintiff's allegations of severe pain); *Pettaway v. Astrue*, 376 F. App'x 889, 891 (11th Cir. 2010) (per curiam) (finding good cause to reject a treating physician's opinion when the treating physician's assessment went against the balance of the objective medical evidence and was based mainly on the claimant's subjective complaints).

The Court is similarly unpersuaded by the Plaintiff's cursory argument that the ALJ erred by substituting her opinion for that of Dr. Frankle. (Doc. 15 at 31). The ALJ specifically considered Dr. Frankle's records relative to the Plaintiff's shoulder issues, but—as noted—observed that Dr. Frankle treated both shoulders conservatively. (R. 19-20). The ALJ also observed that, after a reasonable period of post-operative physical therapy and the use of a nerve stimulator unit, the Plaintiff reported her right shoulder pain at rest to be "only '2/10.'" (R. 19). To accommodate the Plaintiff's residual shoulder problems, however, the ALJ restricted her to a limited range of sedentary work, including no overhead reaching. *Id*. By the Court's consideration, the ALJ did not improperly substitute her opinion for that of Dr. Frankle but simply complied with her duty to weigh all of the evidence of record and resolve any inconsistencies. *See* 20 C.F.R. §§ 404.1520b, 404.1527, 404.1545, 416.920b, 416.927, 416.945.

## 2.  Dr. Martinez

On May 22, 2014, the Plaintiff visited Dr. Martinez for an independent medical evaluation.  (R. 791-98).  After performing a physical examination, Dr. Martinez opined that the Plaintiff suffered from chronic cephalalgia; severe Meniere's vertigo with focal seizure Meniere's syndrome; bilateral shoulder issues with rotator cuff on the right side; bilateral plantar fasciitis with tarsal tunnel syndrome; chronic severe cervical, thoracic, and lumbosacral strain with palpable fibromyositis; chronic pain syndrome as well as chronic insomnia secondary to that pain syndrome; probable cervical, thoracic, and lumbar herniated nucleus pulposus; and probable L4-5 and L5-S1 herniated disks and a probable cervical herniated disk.  (R. 797).  He opined that the Plaintiff was permanently and totally disabled and that she could not engage in any lifting, bending, or straining.  (R 797-98).  Approximately one month later, on June 27, 2014, Dr. Martinez completed an RFC Questionnaire on behalf of the Plaintiff, in which he stated, *inter alia*, that the Plaintiff was able to lift and carry less than ten pounds occasionally and was unable to work.  (R. 833-37).

Dr. Martinez next saw the Plaintiff approximately two years later, on June 14, 2016.  (R. 843).  Roughly a month afterwards, on July 18, 2016, he reiterated his RFC opinion but further limited the Plaintiff to lifting and carrying a maximum of two pounds.  (R. 838-42).

The ALJ accorded Dr. Martinez's opinion "little weight" on the grounds that Dr. Martinez only examined the Plaintiff twice and that his opinions were inconsistent with Dr. Martinez's own assessments as well as the record as a whole.  (R. 23, 791-98,

12

833-49). The ALJ noted in this regard that, although Dr. Martinez opined the Plaintiff was completely disabled, he also stated she could lift and carry up to ten pounds occasionally. (R. 20). The ALJ also noted that, despite Dr. Martinez's stated limitations, the Plaintiff acknowledged she engaged in a variety of recreational activities, such as fishing, and was also able to perform clerical work (albeit not at a gainful level) from her alleged onset date until 2014. (R. 21).

The ALJ's assessment of Dr. Martinez's opinions is adequately supported by the record, and the Plaintiff fails to demonstrate otherwise. As a preliminary matter, although the ALJ seems to have accepted that Dr. Martinez was the Plaintiff's "treating neurologist" (R. 20), the isolated nature of his relationship with the Plaintiff calls into question whether he qualified as a treating physician whose opinions were entitled to any special deference, *see* 20 C.F.R. § 404.1527(a)(2) ("We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s)"). The Court notes in this regard that, as alluded to above, Dr. Martinez examined the Plaintiff on only two occasions more than two years apart—once in May 2014 and again in June 2016. In addition, other than assessing the Plaintiff's medical conditions, Dr. Martinez did not actually treat any of those conditions. (R. 791-98, 843-49).

Regardless of whether Dr. Martinez constituted a treating physician, there was nothing inappropriate in the ALJ taking into account the fact that Dr. Martinez only saw the Plaintiff twice. Indeed, the Regulations expressly direct that ALJs should

consider the length, nature, and extent of a doctor's relationship with the claimant when weighing medical opinions. 20 C.F.R. § 404.1527(c).

The ALJ's decision to discount Dr. Martinez's opinions because they were inconsistent with the record as a whole is also authorized by the Regulations. 20 C.F.R. § 404.1527(c). This includes the ALJ's reliance on the fact that the Plaintiff was able to perform some work during the period in which she alleged disability, even if that work did not rise to the level of substantial gainful activity. 20 C.F.R. § 404.1571 (any work a claimant performs during any period in which she alleges disability, even if the work does not constitute substantial gainful activity, may demonstrate the claimant maintains the ability to perform work at the substantial gainful activity level); *see also Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1984).

The Plaintiff's assertion that Dr. Martinez's opinions were consistent with the doctor's own evaluations does not alter the Court's analysis. Even assuming *arguendo* that Dr. Martinez's opinions are, in fact, supported by his treatment notes, the ALJ nonetheless rejected those findings on the grounds that Dr. Martinez's stated extreme functional limitations were not supported by the record as a whole. As noted, the Plaintiff does not show otherwise.

### 3. Dr. Ijewere

On June 18, 2012, the Plaintiff visited Dr. Ijewere for a consultative examination (CE), during which Dr. Ijewere diagnosed the Plaintiff with anxiety; neuropathy; tarsal tunnel-chronic; and pain in both the back and the legs due to lumbar disc and sacrococcygeal problems. (R. 581, 587). After performing a physical

examination, he noted that the Plaintiff had "difficulty with sitting duration" as a result of her back pain; and that lifting, carrying, and other intense labor tasks "will be a challenge" for her. (R. 587). Dr. Ijewere also stated that the Plaintiff mentioned shoulder issues during his examination of her but that he did not delve into those problems. (R. 587).

The Plaintiff urges that the ALJ "did not even consider" Dr. Ijewere's opinions and that such failure requires reversal. The Court disagrees. To begin, the ALJ specifically discussed Dr. Ijewere's findings in reaching her disability determination. (R. 20). Further, while it is true (as the Commissioner effectively concedes) that the ALJ did not explicitly state the weight she accorded to Dr. Ijewere's assessments, any such error did not prejudice the Plaintiff and is therefore harmless. *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (per curiam) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (stating that an error is harmless when it does not prejudice a claimant)). The Court notes in this regard that Dr. Ijewere's opinions with respect to the Plaintiff's ability to sit, lift, and carry are vague and do not contradict the ALJ's RFC finding limiting the Plaintiff to sedentary work with some additional limitations. The same can be said of Dr. Ijewere's generalized, nonspecific statements that the Plaintiff has "difficulty with sitting duration" and that lifting, carrying, and other intense labor tasks "will be a challenge" for her. (R. 587); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to discuss weight given to a physician's opinion constituted harmless error when the opinion did not contradict the ALJ's finding and was substantially similar to that of another doctor

15

whose opinion was given substantial weight); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding harmless error where the ALJ failed to explicitly state the weight he afforded to a number of physicians' medical opinions where none of those opinions directly contradicted the ALJ's findings). As a result, the Court finds no cause for remand on this claim.

## B.
### *RFC Finding*

The Plaintiff's claim of error with respect to the ALJ's RFC determination is equally unavailing. As noted above, at step four of the sequential evaluation process, the ALJ must assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ must make an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id.* at § 404.1545(a)(1). In rendering this determination, the ALJ must consider the medical opinions of record as well as the claimant's medically determinable impairments, including those that are not severe, and the total limiting effects of each. *Id.* at §§ 404.1520(e), 404.1545(a)(2); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

Here, as noted previously, the ALJ determined that the Plaintiff had the RFC to perform less than the full range of sedentary work, subject to certain limitations,

including lifting and carrying ten pounds occasionally.[6]  The Plaintiff complains the ALJ's lifting limitation is not adequately supported by the record evidence.  (Doc. 15 at 23).  The Court again disagrees.

In reaching her decision, the ALJ thoroughly described the evidence buttressing her RFC determination.  (R. 16-24).  That evidence included, *inter alia*: (1) a 2009 MRI of the Plaintiff's right shoulder showing some abnormalities but an intact rotator cuff (R. 19, 802); (2) a 2011 x-ray revealing only mild AC joint arthritis in the Plaintiff's left shoulder (R. 19, 558); and (3) the Plaintiff's testimony at the hearing that she had no issues moving her upper extremities and that she only experienced problems reaching overhead as well as reaching, pushing, and pulling significant weight (R. 21, 48-49).  Additionally, as discussed above, the ALJ properly discounted the medical opinions requiring further limitations to those assessed by the ALJ in her RFC determination, and properly discounted Plaintiff's subjective complaints of shoulder issues.  As to the latter, the ALJ specifically noted that the Plaintiff's part-time work and activities of daily living (such as performing light household chores, driving short distances, shopping in stores, fishing in a boat, and pursuing other recreational pastimes) were inconsistent with her alleged limitations.  (R. 22, 427-32, 561, 571, 602).  This evidence was sufficient to support the ALJ's RFC determination, and the Plaintiff's argument to the contrary therefore fails.

---

[6] The Regulations define sedentary work as work that involves, among other things, "lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . ."  20 C.F.R. § 404.1567(a).

## C.
### *Sit and Squirm Jurisprudence*

The Plaintiff's final contention that the ALJ improperly engaged in "sit and squirm" jurisprudence likewise fails. "Sit and squirm" jurisprudence occurs when "an ALJ who is not a medical expert [] subjectively arrive[s] at an index of traits which [s]he expects the claimant to manifest at the hearing" and denies the claim if the claimant does not exhibit those traits. *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) (quotation omitted). In this Circuit, however, it is not inappropriate for the ALJ to observe and comment upon a claimant's demeanor at the hearing as long as that observation is not offered as the sole basis for discounting the Plaintiff's credibility. *Macia v. Bowen,* 829 F.2d 1009, 1011 (11th Cir. 1987) (citing *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985)); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ commented in her decision that the Plaintiff's ability to lift her arms up to almost shoulder level repeatedly during the hearing was incompatible with her alleged problems "with reaching with both upper extremities." (R. 21). The ALJ did not, however, predicate her finding that the Plaintiff was not disabled merely on this observation. As noted above, she instead based that finding on the Plaintiff's overall medical history, her activities of daily living, her own testimony, and the dearth of objective evidence supporting her alleged restrictions. (R. 20-21).

Because the ALJ did not solely rely on the Plaintiff's demeanor at the hearing in reaching her credibility determination, and because the Plaintiff's does not challenge

the ALJ's assessment of her subjective complaints on other grounds, the Court finds

that the ALJ did not improperly engage in "sit and squirm" jurisprudence.

IV.

For the foregoing reasons, it is hereby ORDERED:

1.     The Commissioner's decision is affirmed.

2.     The Clerk is directed to enter Judgment in the Defendant's favor and to

close the case.

DONE and ORDERED in Tampa, Florida, this 20th day of September 2019.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record